CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 31 2011

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DAVID ATKINS,** | ) CASE NO. 7:11CV00493 |
|  | ) |
| **Plaintiff,** | ) |
|  | ) MEMORANDUM OPINION |
| vs. | ) |
|  | ) |
|  | ) |
| **KATHY SCHWARTZ, <u>ET</u> <u>AL</u>.,** | ) By: Glen E. Conrad |
|  | ) Chief United States District Judge |
| **Defendant(s).** | ) |

David Atkins, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant jail officials have deprived him of appropriate medical treatment, in violation of his constitutional rights. Finding that Atkins' allegations fail to state any claim actionable under § 1983, the court will summarily dismiss the action.

**I**

Atkins' submissions indicate the following sequence of events from which his claims arise. Atkins states that he suffers from "Hypoglycemia," seizures, and headaches, for which he has been prescribed Imatrix. On September 7, 2011, officials transferred Atkins from the Norfolk City jail to the Rockingham-Harrisonburg Regional Jail ("the jail"). After his first day there, he spoke to a nurse, informed her that he had previously been incarcerated at the jail and that a doctor there had previously prescribed a "double portion diet" because of his hypoglycemia. The nurse informed Atkins that the jail "did not treat hypoglycemia." Atkins signed a release to allow jail medical personnel to obtain his medical records and expected the nurse to sign him up to see a doctor.

In the general population at the jail, Atkins traded property items to other inmates for extra food in his self-directed effort to "control [his] medical condition." When he began getting

headaches, cold sweats, dizziness and blurry vision, he informed the nurse that he believed these symptoms resulted from a drop in his blood sugar level. The nurse told him that no doctor had ordered nurses to check Atkins' blood sugar and no one had ordered a special diet for him. On September 10, 2011, Atkins filed a grievance, describing his symptoms and complaining that officials were denying him treatment for his hypoglycemia. A nurse responded, advising him that the medical department was still waiting for "documentation" and that he could file a medical request or ask an officer regarding transport to the medical unit for examination. Instead, Atkins appealed the grievance response and sent the sheriff a request for medical treatment.

This request was forwarded to the nurse, who had officials bring Atkins to the medical unit on September 15, 2011. There, he discovered that the jail did have medical records from his prior incarceration, including documentation of the diet that a specialist had ordered for him during that time. He told the nurse she should continue that previously ordered, special diet. When he still did not receive the diet, he filed more grievances. On September 19, 2011, officials ordered him moved to the medical department, where his medical observation cell had blood on the walls and bloody tissues on the floor. In the medical unit, he also could not watch television, play board games with other inmates, or shower every day, and his telephone usage was limited. Nurses checked Atkins' temperature and blood pressure regularly, but did not check his blood sugar.

Atkins asked the nurse why he had been moved, and she said, "Because of your grievance." She said that because he had asked for medical treatment, officials had him moved to the medical unit so that the medical staff would monitor his condition. Atkins then filed grievances and appeals, complaining that the nurse had ordered his move in retaliation for his

grievances. In response, officials advised him that medical staff would monitor his condition and consult with the jail doctor, who would "have the final say on [his] treatment."

Atkins states that his symptoms have gotten worse. He believes his blood sugar is "dropping more," he has lost weight, and he receives no blood sugar checks or treatment for his headaches. Atkins sues the head nurse and the sheriff, seeking $2,500,000 in damages.

II

The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). After a review of Atkins's allegations, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Atkins raises three claims, based on his allegations about his medical care at the jail: (1) deliberate indifference by the nurse to plaintiff's serious medical need for the previously prescribed diet; (2) retaliation by the nurse for plaintiff's submission of grievances; and (3) deliberate indifference by the sheriff to plaintiff's need for the diet.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional

violation in this context involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not generally implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Moreover, medical malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Atkins may be able to prove that he has a serious medical need for treatment of his hypoglycemia. He himself believes that the jail medical staff should immediately have treated his condition in September 2009, according to a doctor's prescription as noted in old medical records from his last stint in the jail or based on Atkins' verbal report of treatment that a doctor at another jail had recently prescribed. On the other hand, the medical staff, in their medical judgment, determined that Atkins' condition as they observed it did not warrant an immediate appointment with the jail doctor or providing him the double portion diet a previous doctor had ordered after observing his symptoms at some unidentified earlier time period. The course of action they believed appropriate was to confine him in the medical unit for close observation of his current symptoms, wait to obtain other related records, and report their findings to the jail

doctor, so that he could decide whether any additional treatment should be prescribed.[1] Atkins' submissions offer no indication that medical staff members knew failure to provide the previously diet posed a substantial risk of serious harm, given the evaluation and care they provided in the alternative. This sort of disagreement between the patient and medical staff over the appropriate course of treatment simply does not support a claim of deliberate indifference as required to state a constitutional claim.

Atkins' allegations also state no actionable claim that the sheriff was deliberately indifferent to his serious medical needs. To bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990).

Atkins asserts that after he told the sheriff about the diet doctors had prescribed previously, the sheriff should have made sure the medical staff provided that diet, instead of forwarding Atkins request back to the nurse. Based on Atkins' failure to allege facts demonstrating deliberate indifference by the jail medical staff, his allegations also fail to show that the sheriff tacitly approved any misconduct by that staff. Moreover, the sheriff rightfully relied on his staff to determine, using their medical expertise, the proper course of treatment for Atkins' current symptoms. Id. at 855. For these reasons, Atkins' claims that he did not receive appropriate medical care must be summarily dismissed, pursuant to § 1915A(b)(1), для failure to state a claim.

---

[1] In a grievance response dated September 17, 2011, a nurse informed Atkins that she had ordered him a diabetic snack daily and a noon tray on days when the jail served only morning and evening meals. Another response dated September 20, 2011, stated that while Atkins was in the medical unit, staff supplemented his meals with a night time snack and a third tray on weekends.

5

Finally, Atkins' allegations provide no support for a claim under § 1983 that the nurse moved him to the medical unit in order to retaliate against him for filing a grievance. To state a retaliation claim actionable under § 1983, an inmate must allege facts sufficient to demonstrate that the official took the allegedly retaliatory act "in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Atkins makes neither of these showings. Because inmates have no constitutional right to a jail grievance procedure, Atkins was not exercising a constitutional right when he filed grievances about his medical care. Moreover, his own allegations indicate that the nurse moved him to the medical unit in order to monitor his medical condition and not with any intent to punish him. The court will summarily dismiss Atkins' retaliation claim as frivolous, pursuant to § 1915A(b)(1).

In short, Atkins' allegations do not demonstrate that anyone at the jail has acted with deliberate indifference to his medical needs or retaliated against him in violation of his constitutional rights. Accordingly, the court finds that Atkins has failed to state any § 1983 claim and will dismiss the complaint without prejudice in its entirety. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 28th day of October, 2011.

_____
Chief United States District Judge

6